Chester DIRKES and Marie
Dirkes, Plaintiffs,

v.

BOROUGH OF RUNNEMEDE, Borough of Runnemede Police Department and Lieutenant Emil P. Busko, Defendants.

No. 1993–1214.

United States District Court,
D. New Jersey.

Aug. 14, 1996.

Gilbert Brooks, Kozlov, Seaton, Romenini & Brooks, P.C., Cherry Hill, NJ, for Plaintiffs.

George J. Botcheos, Cherry Hill, NJ, for Defendants.

## OPINION

BROTMAN, Senior District Judge.

Presently before this Court is a motion for summary judgment brought by the Borough of Runnemede ("Borough"), the Borough of Runnemede Police Department ("Department"), and Lieutenant Emil Busko ("Lt. Busko") (collectively, the "Defendants"). For the reasons set forth below, the Court will deny this motion.

### I. Facts and Procedural Background

The present action arises from the investigation of and disciplinary action taken against Plaintiff Chester Dirkes ("Plaintiff Dirkes"), formerly an officer with the Department. On May 24, 1990, in the course of an investigation into a citizen's death, Plaintiff Dirkes allegedly removed pornographic magazines and videotapes from the decedent's apartment. Based on this allegation, the Camden County Grand Jury returned a one count indictment for misconduct in office against him on May 29, 1991. As a result of the indictment, on May 30, 1991, the Department issued a disciplinary notice to Plaintiff Dirkes and suspended him without pay and benefits. Plaintiff Dirkes' trial commenced on April 20, 1992 and on May 5, 1992, he was acquitted of the sole charge against him.

Following the acquittal, the Borough retained special counsel and resumed its internal affairs investigation against Plaintiff Dirkes. The Department assigned Lt. Busko to investigate the matter. On or about May 7, 1992, Lt. Busko obtained the names and rental dates of certain pornographic videotapes previously rented by Plaintiff Dirkes and his wife, co-plaintiff Marie Dirkes (collectively, "Plaintiffs"). Lt. Busko received this information from an employee of Videos To Go, the store from which Plaintiffs apparently regularly rent or buy video tapes for their private use. In seeking to obtain this information, Lt. Busko failed to secure a warrant, a subpoena or a court order. He simply requested and received the information from an employee of Videos To Go without question.

The internal affairs memorandum listing the video tape rental information was distributed to the Borough's special counsel, who in turn distributed it in connection with Plaintiff Dirkes' disciplinary hearing and in a proceeding before the Superior Court of New Jersey, Camden County.[1]

On or about March 19, 1993, Plaintiffs filed their complaint with this Court alleging that Defendants violated the provisions of the Videotape Privacy Protection Act of 1988, as

---

1. Plaintiffs do not argue that the information received from Videos To Go gave rise to the disciplinary action against Plaintiff Dirkes. Rather, Plaintiffs argue that the information was wrongfully used in the course of that proceeding.

237

codified at 18 U.S.C. § 2710 (the "Act"), as well as Plaintiffs' common law privacy rights. By Order, dated March 30, 1993, this Court dismissed without prejudice Plaintiffs' Order To Show Cause which sought a preliminary injunction for that purpose. Subsequently, the video information was received into evidence at Plaintiff Dirkes' disciplinary hearing. As a result of that hearing, the Department terminated Plaintiff Dirkes from his employment.

As mentioned above, Plaintiffs' original complaint proffered three counts: (1) violation of the terms of the Videotape Privacy Protection Act, 18 U.S.C. § 2710; (2) a common law claim for intentional and unjustified intrusion by the Defendants into the private affairs and solitude of Plaintiffs and (3) a common law claim based on Defendants' public disclosure of private facts. All three claims request that the video information in question be prohibited from distribution in any legal proceeding by way of permanent injunction and that the information be destroyed. In addition, Plaintiffs seek compensatory and punitive damages as well as attorneys' fees. The Defendants move this Court for summary judgment on Count I of the Complaint, which alleges a violation of the Videotape Privacy Protection Act. 18 U.S.C. § 2710. Accordingly, the Court will not address the second or third counts of Plaintiffs' complaint.

## II. Discussion

### A. Summary Judgment Standard

The standard for granting summary judgment pursuant to Federal Rule of Civil Procedure 56 is a stringent one. Summary judgment is appropriate only if all the probative materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). In determining whether there remain any genuine issues of material fact, the court must resolve all reasonable doubts in favor of the nonmoving party. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d

Cir.1983); *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972); *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Significantly, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Under the standards announced by the Supreme Court's trilogy in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and *Matsushita*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original). Indeed, where the moving party has made a properly supported motion for summary judgment, it is incumbent upon the nonmoving party to come forward with specific facts to show that there is a genuine issue of material fact for trial. *Id.* at 248, 106 S.Ct. at 2510. Thus, once the moving party has carried its burden of establishing the absence of genuine issues of material fact, the nonmoving party "may not rest upon mere allegations or denials" of its pleadings, Fed.R.Civ.P. 56(e), but must produce sufficient evidence that will reasonably support a jury verdict in its favor, *id.* at 249, 106 S.Ct. at 2510–11; *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring), and not just "some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *see also, Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir.), *cert. denied*, 502 U.S. 940, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991) (In opposing summary judgment, a non-movant may not "rest upon mere allegations, general denials, or ... vague statements."); *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) ("unsupported allegations in [a non-

movant's] memorandum and pleadings are insufficient to repel summary judgment").

## B. Liability Under the Videotape Privacy Protection Act

Defendants have moved for summary judgment on Count I of Plaintiffs' complaint, which asserts a violation of the Videotape Privacy Protection Act. *See* 18 U.S.C. § 2710. Congress enacted the Videotape Privacy Protection Act "to protect [certain personal information of an individual who rents video materials] from disclosure." S.Rep. No. 100–599, 100th Cong., 2d Sess. at 16 (1988). The impetus for enacting the measure arose as a result of Judge Robert Bork's 1987 Supreme Court nomination battle, during which a Washington, D.C. newspaper obtained a list of 146 video tapes the Bork family had previously rented from their neighborhood store. *Id.* at 5. Members of the Senate Judiciary Committee were outraged by the invasion into the Bork family's privacy. Both houses of Congress acted quickly to outlaw certain disclosures of such clearly private information, resulting in the Videotape Privacy Protection Act.[2] *Id.*

Judicial recognition of the contours of an individual's right to privacy has been an evolutionary process. In their seminal 1890 Harvard Law Review article, *The Right to Privacy,* Justices Warren and Brandeis emphasized the importance of protecting an individual's rights as our society developed:

> That the individual shall have full protection in person and in property is a principle as old as the common law; but it has been found necessary from time to time to define anew the exact nature and extent of such protection. Political, social, and economic changes entail the recognition of new rights, and the common law, in its eternal youth, grows to meet the demands of society.

Samuel D. Warren and Louis D. Brandeis, *The Right to Privacy,* 4 Harv.L.Rev. 193, 193 (1890). The authors go on to discuss how "recent inventions and business methods" necessitated the need to judicially protect an individual's right "to be let alone." *Id.* at 195. A century later, our society has firmly embraced the concept of privacy, as evidenced by Congressional statutes protecting this right as it exists in various forms. *Cf.* Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232(g) et seq. (recognizing the individual's right to privacy with regard to access and disclosure of student records); The Privacy Act, 5 U.S.C. § 552a (recognizing an individual's right to privacy with regard to personal information stored by federal agencies); Fair Credit Reporting Act of 1970, 15 U.S.C. § 1681 et seq. (recognizing an individual's right to privacy with regard to access and disclosure of credit records); The Tax Reform Act of 1976, 26 U.S.C. § 6103 (recognizing an individual's right to privacy with regard to disclosure of tax returns); The Right to Financial Privacy of 1978, 12 U.S.C. § 3401 et seq. (recognizing an individual's right to privacy with regard to disclosure of financial records by banks to governmental agencies) and The Cable Communications Policy Act of 1984, P.L. 98–549 (recognizing an individual's right to privacy with regard to the disclosure of a subscriber's cable viewing habits). These statutes reflect the Congressional desire to keep an individual's right to privacy apace with advances in technology that increase exponentially the chances that an individual's privacy can be breached. S.Rep. No. 100–599, 100th Cong., 2d Sess. at 2 (1988). The Video Privacy Protection Act is only the most recent example of such Congressional initiatives. Commenting on the Act, Senator Leahy echoed the sentiments of Justices Warren and Brandeis:

> In an era of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food

---

**2.** Although the Video Protection Privacy Act codifies a federal cause of action for certain disclosures of this type of private information, the Act does not preempt other viable state claims which may be available to an aggrieved party. In fact, the Act provides explicitly that state law is not preempted unless state or local law "require disclosure prohibited by this section." 18 U.S.C. § 2710(f).

they like, what sort of television programs they watch, who are some of the people they telephone . . .

\*　　\*　　\*　　\*　　\*　　\*

[Privacy] is not a conservative or a liberal or moderate issue. It is an issue that goes to the deepest yearnings of all Americans that we are free and we cherish our freedom and we want our freedom. We want to be left alone.

S.Rep. No. 100–599, 100th Cong., 2d Sess. at 6 (1988). *See also, Olmstead v. United States*, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting) (describing the right to be let alone as "the most comprehensive of rights and the right most valued by civilized man."). Consistent with this principle, in construing the scope of the Act, this Court must strive to protect this aspect of an individual's right to privacy in the face of technological innovations that threaten this fundamental right.

To address the merits of the Defendants' summary judgment motion, the Court must make two inquiries. Initially, the Court must determine whether the Plaintiffs are entitled to bring an action under the Act. *See* 18 U.S.C. § 2710(c).[3] If the Plaintiffs are so entitled, the Court must then determine whether the Plaintiffs have brought suit against the correct defendants.

■ Section 2710(c) of the Act provides broadly that "[a]ny person aggrieved by any act of a person in violation of [§ 2710] may

bring a civil action" in an appropriate U.S. District Court.[4] 18 U.S.C. § 2710(c). The Act can be violated in one or all of three ways. First, a "video tape service provider" [5] violates § 2710(b) of the Act by disclosing "personally identifiable information" [6] regarding a customer unless the person to whom the disclosure is made or the disclosure itself falls into one of six categories. 18 U.S.C. § 2710(b). Second, § 2710(d) of the Act is violated when personally identifiable information obtained in any manner other than as narrowly provided by the Act is "received in evidence" in almost any adversarial proceeding. 18 U.S.C. § 2710(d). Third, a person subject to the Act violates § 2710(e) by failing to timely destroy a customer's personally identifiable information. 18 U.S.C. § 2710(e). Upon finding any of these violations, a court may, but need not, award a range of relief including actual damages, punitive damages, attorneys' fees, or "such other . . . equitable relief as the Court may determine to be appropriate." 18 U.S.C. § 2710(c).

Because it is undisputed that subsections (b) and (d) have been violated in the instant matter, § 2710(c) authorizes the Plaintiffs to bring a suit. Videos to Go, the video tape service provider in this matter, violated subsection (b) of the Act by disclosing Plaintiffs' video rental information to Lt. Busko. It is undisputed that this disclosure does not fall into one of the six permissible disclosure exceptions delineated in subsection (b)(2) of

---

**3.** Section 2710(c) of the Act permits this Court to fashion an appropriate remedy which might include ordering the Defendants to destroy or otherwise turn over the Plaintiffs' private information. However, the issue of what would constitute an appropriate remedy in this matter is not presently before this Court and need not be addressed.

**4.** Under the plain language of the Act, the Court finds that the Plaintiffs can show that they are "aggrieved" by showing a violation of the Act. No additional proof of harm is required. Warren and Brandeis' Harvard Law Review article supports this contention; if a violation of an individual's privacy constitutes a "legal *injuria* ", the concomitant mental suffering "caused by an act wrongful in itself" is a compensable claim.

Samuel D. Warren and Louis D. Brandeis, *The Right to Privacy*, 4 Harv.L.Rev. 193, 213 (1890).

**5.** At 18 U.S.C. § 2710(a)(4), the Act defines a "video tape service provider" as:

any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials, or any person or other entity to whom a disclosure is made under subparagraph (D) or (E) of subsection (b)(2), but only with respect to the information contained in the disclosure.

**6.** The Act defines "personally identifiable information" as: information which "identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

**240**

the Act.[7]  A second violation of the Act occurred when Plaintiffs' personally identifiable information was received into evidence at Plaintiff Dirkes' disciplinary hearing. 18 U.S.C. § 2710(d).

■ Having found that there have been two violations of the Act, the Court must now determine whether Lt. Busko, the Department, or the Borough are proper defendants. As noted earlier, subsection (c) provides that "[a]ny person aggrieved by any act of a person in violation of [§ 2710] may bring a civil action." 18 U.S.C. § 2710(c).  While it broadly provides relief for violations of § 2710, this subsection does not delineate those parties against whom an action may be instituted. 18 U.S.C. § 2710(c).  In support of its current summary judgment motion, the Defendants argue collectively that they can not be held liable under the Act because their actions did not violate the Act.  For example, only the actions of a video tape service provider can cause a violation of § 2710(b).  Because the Defendants are not video tape service providers as that term is defined under the Act, they argue that they can not be held responsible under the Act. (Def.'s Br.Supp.Summ.J. at 7–8.)

■ This Court must reject the Defendants' narrow reading of the statute. Again, the plain language of the Act does not delineate those parties against whom an action under this Act may be maintained. Taking

the Defendants' argument to its logical extension, this omission would prevent plaintiffs from bringing a cause of action against anyone. Such an absurd result must be rejected. The clear intent of the Act is to prevent the disclosure of private information. As established by its legislative history, the Act enables consumers "to maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." S.Rep. No. 100–599, at 8 (1988). This purpose is furthered by allowing parties, like these Plaintiffs, to bring suit against those individuals who have come to possess (and who could disseminate) the private information in flagrant violation of the purposes of the Act. Warren and Brandeis, *supra* at 199 ("the individual is entitled to decide whether that which is his shall be given to the public."); S.Rep. No. 100–599, at 8 (1988) ("information collected for one purpose may not be used for a different purpose without the individual's consent."). While it need not identify all potential categories of defendants in this opinion, the Court finds that those parties who are in possession of personally identifiable information as a direct result of an improper release of such information are subject to suit under the Act. Because it is undisputed that Lt. Busko, the Department, and the Borough all possess the information as a direct result of a violation of the Act, each is a proper defendant.[8]

---

**7.** The first three subsections, (b)(2)(A)–(C), provide that a disclosure of the private information by the video tape service provider is allowable if the disclosure is to the consumer, if the service provider has written consent from the consumer or if a law enforcement officer has a warrant, subpoena, or a court order.

In addition, subsection (b)(2)(D) allows the disclosure of a consumer's name and address to any person by a video tape service provider if the consumer has been notified and has had the opportunity to stop the disclosure. However, the disclosure can not "identify the title, description, or subject matter of any video tapes or audio visual material" unless the disclosure is "for the exclusive use of marketing goods and services directly to the consumer."

Subsection (b)(2)(E) allows a disclosure to any person by a video tape service provider if "the disclosure is incident to the ordinary course of business of the video tape service provider."

Finally, subsection (b)(2)(F) permits a disclosure by the service provider "pursuant to a court

order" involving a civil proceeding if there is a "compelling need" for the information, if such information is not obtainable any other way, and if the consumer is given "reasonable notice" that the disclosure is going to be made. 18 U.S.C. § 2710(b)(2)(A)–(F).

**8.** Even if the Plaintiffs were narrowly restricted to bringing an action only against those actors who violated the Act, the Department and Borough would be proper defendants. Section 2710(d) is violated if personally identifiable information is

received in evidence in any trial, hearing, arbitration, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision of a State.

*Id.* The video information that Lt. Busko collected was introduced into Plaintiff Dirkes' disciplinary action. In so receiving this information, and

Furthermore, the Supreme Court in *Local 28 of Sheet Metal Workers v. E.E.O.C.*, 478 U.S. 421, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986), reinforced the principle that remedial statutes should be construed broadly. *Local 28* involved a violation of Title VII, a statute designed to address employment discrimination. Upon examining the legislative history of Title VII, the Court determined that "Congress reaffirmed the breadth of the [district] court's remedial powers under § 706(g) by adding language authorizing courts to order 'any other equitable relief as the court deems appropriate.'" *Local 28*, 478 U.S. 421, 469–70, 106 S.Ct. 3019, 3047 (*quoting* 42 U.S.C. § 2000e–5(g)). This added language is identical to that used in subsection (c)(2)(D) of the Videotape Privacy Protection Act. 18 U.S.C. § 2710(c). It is evident throughout the *Local 28* opinion that the Supreme Court intended to give effect to the legislators' intent to provide as broad remedial powers as possible to the district courts to eliminate the effects of illegal discrimination. *Local 28*, 478 U.S. 421, 468, 106 S.Ct. 3019, 3046. This Court will exercise the same broad powers to give effect to the intent of Videotape Privacy Protection Act's U.S. Senate sponsors. The importance of maintaining the privacy of an individual's personally identifiable information mandates that people who obtain such information from a violation of the Act be held as proper defendants to prevent the further disclosure of the information.

## III. Conclusion

For the reasons set forth above, the Court will deny Defendants' motion for summary judgment. The Court will enter an appropriate order.

### ORDER

Presently before the Court is the Motion of Defendants Borough of Runnemede, Borough of Runnemede Police Department, and Lieutenant Emil P. Busko For Summary Judgment;

because Lt. Busko failed to obtain this information in the manner provided in subsection (b)(2), the Borough and/or the Department violated subsection (d) of the Act. 18 U.S.C. § 2710(d).

Upon review of the record in this case and the submissions of the parties; and

For the reasons set forth in the court's opinion of this date; and

For other good cause shown;

**IT IS** on this 12th day of August, 1996;

**ORDERED** that the Motion of Defendants For Summary Judgment is **DENIED.**

No Costs.

Thus, even under Defendants' restrictive interpretation of the Act, these two defendants would be proper defendants.