**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DANIEL RODRIGUEZ, individually
and on behalf of all others similarly
situated,
                    *Plaintiff-Appellant*,

                    v.

SONY COMPUTER ENTERTAINMENT
AMERICA, LLC, a Delaware limited
liability company; SONY NETWORK
ENTERTAINMENT INTERNATIONAL,
LLC, a Delaware limited liability
company,
                    *Defendants-Appellees*.

No. 12-17391

D.C. No.
4:11-cv-04084-
PJH

OPINION

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, Chief District Judge, Presiding

Argued and Submitted
February 6, 2015—San Francisco, California

Filed September 4, 2015

Before: Richard C. Tallman and Johnnie B. Rawlinson, Circuit Judges, and Raymond J. Dearie, Senior District Judge.[*]

Opinion by Judge Rawlinson

## SUMMARY[**]

### Video Privacy Protection Act

The panel affirmed the district court's dismissal of an action under the Video Privacy Protection Act.

The plaintiff alleged that two Sony corporations violated the Act by retaining his personally identifiable information beyond the Act's statutory limits and by disclosing his personal information between Sony entities. Agreeing with the Sixth and Seventh Circuits, the panel held that the Act does not provide a private right of action to enforce its retention requirements for video service providers. The panel held that the alleged inter-corporate disclosures were exempt from the Act's non-disclosure requirements.

---

[*] The Honorable Raymond J. Dearie, Senior District Judge for the U.S. District Court for the Eastern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Roger Perlstadt (argued), Edelson PC, Chicago, Illinois; Sean Reis, The Reis Law Firm, A.P.C., Rancho Santa Margarita, California, for Plaintiff-Appellant.

Michael G. Rhodes (argued) and Ray A. Sardo, Cooley LLP, San Francisco, California; Lori R. Mason, Cooley LLP, Palo Alto, California; Michelle Doolin, Cooley LLP, San Diego, California, for Defendants-Appellees.

## OPINION

RAWLINSON, Circuit Judge:

Appellant Daniel Rodriguez (Rodriguez) challenges the district court's dismissal of his second amended complaint alleging that Appellees Sony Computer Entertainment America LLC (Sony Computer) and Sony Network Entertainment (Sony Network) International LLC (collectively Sony) violated the Video Privacy Protection Act (the Act) by retaining Rodriguez's personally identifiable information (personal information) beyond the Act's statutory limits, and disclosing his personal information between Sony entities. Rodriguez contends that the district court erred in concluding that the Act does not provide a private right of action to enforce its retention requirements. Rodriguez also takes issue with the district court's conclusion that the intra-corporate disclosures were exempt from the Act's non-disclosure requirements. We affirm the district court's rulings.

## I.  *BACKGROUND*

### A.  Statutory Background

The Act was promulgated in 1988 after the Washington City Paper published Judge Robert Bork's video rental history during his failed Supreme Court confirmation proceedings.  *See Mollett v. Netflix*, *Inc*., No. 12-17045, – F.3d –, 2015 WL 4591798, at *3 (9th Cir. July 31, 2015).

The Act restricts a video service provider's retention and disclosure of a consumer's personal information.  *See* 18 U.S.C. § 2710(b).  A video service provider "means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials, or any person or other entity to whom a disclosure is made . . ."  *Id.* at § 2710(b)(1).  Under the Act, a consumer is "any renter, purchaser, or subscriber of goods or services from a video tape service provider[.]"  *Id.* at § 2710(a)(1).  The Act defines "personally identifiable information" as including "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider[.]"  *Id.* at § 2710(a)(3).  With respect to the retention of a consumer's personal information, the Act mandates that:

> A person subject to this section shall destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information under

subsection (b)(2) or (c)(2) or pursuant to a court order.

*Id.* at § 2710(e).

The Act also imposes liability for unlawful disclosure of a consumer's personal information:

(1) A video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection (d).[1]

---

[1] The Act limits any relief to that provided in 18 U.S.C. § 2710(d). *See* 18 U.S.C. § 2710(b). In turn, 18 U.S.C. § 2710(d) provides:

Personally identifiable information obtained in any manner other than as provided in this section shall not be received in evidence in any trial, hearing, arbitration, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision of a State.

As the Seventh Circuit observed, it appears that § 2710(b) mistakenly references § 2710(d) as a remedies provision. *See Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 537 (7th Cir. 2012) (*Sterk I*) (observing that "[t]he statute says (d), but this must be an error, not only because the only 'relief' provided there is exclusion of the personally identifiable information from evidence, but also because it is very unlikely that a video tape service provider would ever be submitting, as evidence in a legal proceeding, personally identifiable information that the provider had disclosed").

*Id.* at § 2710(b).  The Act also provides that "[a]ny person aggrieved by any act of a person in violation of this section may bring a civil action in a United States district court." 18 U.S.C. § 2710(c).

Relevant to the present appeal, video service providers are exempt from liability for disclosure "if the disclosure is incident to the ordinary course of business of the video tape service provider[.]"  18 U.S.C. § 2710(b)(2)(E).  The Act defines "ordinary course of business" as "debt collection activities, order fulfillment, request processing, and the transfer of ownership[.]" *Id.* at § 2710(a)(2).

### B.  Rodriguez's Claims Under the Act

There have been several permutations of Rodriguez's claims against various Sony entities premised on the provisions of the Act.  In his original class action complaint, Rodriguez alleged that Sony Computer, as a video service provider, violated the Act by maintaining and storing its customers' personal information rather than destroying the information no later than one year after it was collected. Rodriguez averred that, in 2008, he was a registered user of Sony's PlayStation Network, which provides online gaming and video services streamed to a customer's television. Rodriguez rented and purchased several video games and movies through the PlayStation Network in 2009, but did not purchase or rent any movies after Sony modified its streaming system in April, 2010.  According to Rodriguez, Sony continued to store his personal information relating to the movies that he had rented and purchased in violation of the Act's time limits for the storage of such information. Based on these allegations, Rodriguez sought statutory and

punitive damages, as well as injunctive relief and attorneys' fees.

Sony sought dismissal of Rodriguez's complaint on the basis that Rodriguez lacked standing to pursue his claims under the Act, and failed to properly allege any injury-in-fact. Sony also maintained that Rodriguez consented to Sony's retention of his information pursuant to Sony's terms of service and privacy policy.

In response, Rodriguez filed a first amended class action complaint adding Sony Network as a defendant, and ten John Doe defendants. Rodriguez asserted that, subsequent to his registration as a PlayStation Network customer, Sony Network assumed control over the PlayStation Network and its related services. Rodriguez alleged that Sony Computer and Sony Network violated the Act when they impermissibly shared Rodriguez's personal information with each other during the change in Sony's operations.

Rodriguez also alleged that Sony Network's utilization of his personal information for "marketing purposes and demographic studies" demonstrated that his personal information had monetary value and that he never entered into an agreement permitting use of his personal information for these purposes. Rodriguez sought damages and injunctive relief.

Sony filed a motion to dismiss Rodriguez's first amended complaint, which the district court granted. The district court dismissed with prejudice Rodriguez's claim premised on retention of his personal information because the Act does not provide a private right of action for retention of information. The district court also dismissed with prejudice Rodriguez's

unlawful disclosure claim because the Act permits disclosure of personal information between related corporate entities during the ordinary course of business. The district court held that the disclosures by Sony Computer and Sony Network were permitted because the disclosures occurred during the transfer of operations. The district court also concluded that Rodriguez failed to allege any unlawful disclosures to the Doe defendants. The district court dismissed Rodriguez's unlawful disclosure claim with prejudice as it related to Sony Computer and Sony Network, but granted leave to amend regarding the Doe defendants.

Despite the limitations imposed by the district court's dismissal order, Rodriguez filed a second amended class action complaint with significantly revamped claims. Rodriguez alleged that, between 2009 and 2011, he rented movies from Sony Computer, but had not rented or purchased any movies since August 28, 2011. Rodriguez averred that, although Sony Network assumed management over the PlayStation Network in 2011, "the change in management did not involve any transfer of ownership . . ." According to Rodriguez, Sony Computer's disclosure of his personal information occurred prior to the change in management.

Rodriguez's original claim based on violations of the Act was restated as three claims premised on unlawful retention, unlawful disclosure, and a newly minted breach of contract claim. In support of his claim for unlawful retention, Rodriguez alleged that Sony Computer and Sony Network retained his personal information for an indefinite period of time in violation of the Act and lacked policies for the timely destruction of this information. Rodriguez asserted that he was injured because the unlawful retention was a violation of his privacy rights and he suffered economic damages

stemming from Sony's unauthorized use of his personal information. According to the Complaint, Rodriguez incurred monetary damages because a portion of the purchase price for each movie or video game "was intended to pay for [Sony Computer's] costs in timely destroying [customers' personal information]. . . ." Rodriguez alleged that he overpaid for his movie purchases because the purchase or rental prices included costs associated with compliance with the Act. Rodriguez also asserted that he was entitled to relief pursuant to the Stored Communications Act for Sony's willful and intentional violations.

For his unlawful disclosure claim, Rodriguez alleged that Sony Computer disclosed without consent Rodriguez's personal information to Sony Network prior to the transfer of management in September, 2011. Rodriguez stated that these disclosures deprived him of control over his personal information and his ability to market that information for his own financial gain.

In support of his breach of contract claim, Rodriguez asserted that he entered into a binding contract with Sony Computer for the purchase and rental of video games and movies. According to Rodriguez, Sony Computer and Sony Network breached this contract that incorporated the Act's retention requirements, resulting in actual damages.

The district court again granted Sony's motion to dismiss. The district court observed that, despite the prior dismissal of Rodriguez's unlawful retention claim with prejudice, Rodriguez's claim "has resurfaced in a variety of different packages. . . ." The district court determined that Rodriguez could not reshape his dismissed unlawful retention claim as a breach of contract claim because he failed to identify any

agreement memorializing the Act's requirements as contractual obligations. The district court also held that dismissal of Rodriguez's unlawful disclosure claim was warranted because leave to amend was granted only as to any unlawful disclosures made to the Doe defendants.

Rodriguez filed a timely notice of appeal.

## II. *STANDARDS OF REVIEW*

"We review *de novo* the district court's dismissal of [Rodriguez's] Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) and accept all factual allegations in the Amended Complaint as true." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th Cir. 2014) (citation omitted).

"We review the interpretation of a statute de novo. . . ." *United States v. JDT*, 762 F.3d 984, 1000 (9th Cir. 2014) (citation omitted).

## III.   *DISCUSSION*

### A.  Private Right of Action For Unlawful Retention of Personal Information

Rodriguez maintains that the plain language of 18 U.S.C. § 2710(c)(1) provides a private right of action because it permits a civil action for "violation of this section."

Although we have not previously addressed this issue, the Seventh Circuit has rejected the same argument. In *Sterk I*, the Seventh Circuit considered whether the plaintiff could pursue an unlawful retention claim stemming from Redbox's

retention of personal information related to its rental services. *See Sterk I*, 672 F.3d at 536. The Seventh Circuit observed that, because § 2710 was "not well drafted," application of its statutory language posed several challenges. *Id.* at 538. The Seventh Circuit emphasized that "[t]he biggest interpretive problem" stems from failure to specify the scope of relief afforded in § 2710(c). *Id.* The Seventh Circuit resolved the interpretive problem by reasoning that § 2710(c) created a private right of action only for unlawful disclosure of personal information and not for unlawful retention beyond the destruction provisions in the Act. *See id.* The Seventh Circuit observed that:

> If (c) appeared after all the prohibitions, which is to say after (d) and (e) as well as (b), the natural inference would be that any violator of any of the prohibitions could be sued for damages. But instead (c) appears after just the first prohibition, the one in subsection (b), prohibiting disclosure. . . .

*Id.* The Seventh Circuit acknowledged that the language placement could have been an accident of legislative drafting, but agreed with the Sixth Circuit that "the more plausible interpretation is that it is limited to enforcing the prohibition of disclosure. . . ." *Id.* (citing *Daniel v. Cantrell*, 375 F.3d 377, 384–85 (6th Cir. 2004)).

The Seventh Circuit further observed that awarding damages or other forms of relief would be illogical for unlawful retention because no injury would occur absent disclosure. As the Seventh Circuit articulated:

> How could there be injury, unless the information, not having been destroyed, were disclosed?  If, though not timely destroyed, it remained secreted in the video service provider's files until it was destroyed, there would be no injury.  True, subsection (c)(2)(A) allows \$2,500 in liquidated damages, without need to prove actual damages, but liquidated damages are intended to be an estimate of actual damages, and if failure of timely destruction results in no injury at all because there is never any disclosure, the only possible estimate of actual damages for violating subsection (e) would be zero. . . .

*Id.* (internal quotation marks omitted).

Although Rodriguez contends that the Seventh Circuit's opinion was wrongly decided, the Seventh Circuit's approach to statutory interpretation was sound.  The Seventh Circuit astutely noted the limited guidance provided by the statutory language.  *See id.*   The unlawful disclosure provision provides that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection (d)."  18 U.S.C. § 2710(b).  As discussed, § 2710(d) is a dead end for any damages remedy, as it merely precludes the introduction of personal information as evidence "in any trial, hearing, arbitration, or other proceeding" and does not otherwise provide for relief.  18 U.S.C. § 2710(d).

There are other notable distinctions between the unlawful disclosure and unlawful retention provisions. The unlawful disclosure provision explicitly provides for liability "to the aggrieved person." 18 U.S.C. § 2710(c). However, the unlawful retention provision does not specify that a video service provider is liable for the knowing retention of personal information. That provision lacks any *mens reas* articulation and does not specify any form of available relief to an aggrieved party. *See* 18 U.S.C. § 2710(e). Instead, the provision simply delineates a statutory duty for the "[d]estruction of old records" by the video service provider, and does not otherwise provide for civil liability. *Id.*[2]

Generally, when the language of the statute is directed toward the entity being regulated, rather than the party seeking relief, we have not recognized a private right of action. *See Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1171 (9th Cir. 2013) (articulating that "[s]tatutes containing general proscriptions of activities or focusing on the regulated party rather than the class of beneficiaries whose welfare Congress intended to further do not indicate an intent to provide for private rights of action") (citations, alteration, and internal quotation marks omitted). Faced with this drafting conundrum, the Seventh Circuit understandably considered the statute's structure in resolving the private right of action issue.

---

[2] The Seventh Circuit's decision in *Graczyk v. West Pub. Co*., 660 F.3d 275 (7th Cir. 2011), relied on by Rodriguez, does not compel a contrary conclusion. In *Graczyk*, the Seventh Circuit determined that the plaintiff possessed standing to pursue a civil action for unlawful disclosures in violation of the Driver's Privacy Protection Act, and that the statute created a federal right of action. *See Graczyk*, 660 F.3d at 278. No retention claim was at issue.

Courts "must interpret the statute as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *United States v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015) (citation, alterations, and internal quotation marks omitted). "Additionally, particular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme." *Id.* (citation, alteration, and internal quotation marks omitted). Rather than focusing on the phrase "in this section," as urged by Rodriguez to support creating a right of action for all subsections, the Seventh Circuit employed accepted principles of statutory construction to interpret an imperfectly drafted statute.

The Seventh Circuit's decision is consistent with the rationale utilized by the Sixth Circuit, the only other court to have addressed the Act's reach. In *Daniel*, the plaintiff sued video store owners for disclosing personal information related to his video rentals. *See* 375 F.3d at 379–80. Affirming summary judgment in favor of the defendants, *see id.* at 379, the Sixth Circuit concluded that only the unlawful disclosure provision "includes language related to liability. Neither section (d) nor section (e) contains such language." *Id.* at 384 (citation omitted). The Sixth Circuit explained that:

> the structure of the statute makes it clear that a civil action may be brought based on only a violation of section (b). Immediately after section (b), section (c) discusses the rules for bringing a civil action. After section (c), sections (d) and (e) discuss receiving personal information into evidence and destruction of old records. If these later sections were to be

a basis for liability, it would make sense that
the section on civil actions would come at the
end of the statute, rather than preceding these
sections.

*Id.* (footnote reference and internal quotation marks omitted).

Finally, the Act's legislative history does not evince any
Congressional intent to create a private right of action for a
video service provider's retention of a consumer's personal
information beyond the statutorily proscribed time
limitations. When the Act was passed in 1988, its purpose
was "[t]o preserve personal privacy with respect to the rental,
purchase or delivery of video tapes or similar audio visual
materials." S. Rep. No. 100-599, at 1 (1988), *reprinted in*
1988 U.S.C.C.A.N. 4342-1.[3] It appears that Congress
intended to fulfill its expressed purpose by providing a civil
remedy for the unlawful disclosure of personal information,
but not for unlawful retention of that information. The Senate
Report confirms that the Act "prohibits video stores from
disclosing personally identifiable information – information
that links the customer or patron to particular materials or
services. In the event of an *unauthorized disclosure*, an
individual may bring a civil action for damages." *Id.* at 7
(emphasis added). The Senate Report explains that "[t]he
civil remedies section puts teeth into the legislation, ensuring
that the law will be enforced by individuals who suffer as the
result of *unauthorized disclosures*. . . ." *Id.* at 8 (emphasis
added). Additionally, in summarizing the subsections, the
Senate Report reiterates that "Section 2710(c) imposes
liability where an individual, in violation of the Act,

---

[3] No House Report was submitted in support of the Act. *See* S. Rep. No.
100-599, at 1 (1988).

knowingly *discloses* personally identifiable information concerning any consumer. . . ." *Id.* at 14 (emphasis added).

No similar language of liability appears in the discussion of the retention subsection. With no mention of civil liability, the Report explains that "the purpose of [the retention] provision is to reduce the chances that an individual's privacy will be invaded, by requiring the destruction of information in an expeditious fashion, appropriate to the circumstances and to the policies protected by this Act." *Id.* at 15. This legislative history persuades us that Congress did not intend to impose civil liability for violations of the retention provision.

Further indication of Congressional intent may be garnered from the 2013 amendment to 18 U.S.C. § 2710, subsequent to the decisions of the Sixth and Seventh Circuits denying a private right of action for violation of the retention provisions of the Act. The amendment clarified that written consent of the consumer for disclosures may be obtained via the internet on an ongoing basis. *See* H.R. Rep. No. 112-312, at 1 (2011); *see also* 18 U.S.C. § 2710(b)(2)(B) (2013). Notably, Congress did not amend § 2710 to provide for a private right of action for retention of a consumer's personal information in light of the Sixth and Seventh Circuit's decisions. *See* 18 U.S.C. § 2710(c) & (e) (2013).

"Under the rules of statutory construction, we presume that Congress acts with awareness of relevant judicial decisions." *United States v. Alvarez-Hernandez*, 478 F.3d 1060, 1065 (9th Cir. 2007) (citations and internal quotation marks omitted). "We also presume that when Congress amends a statute, it is knowledgeable about judicial decisions interpreting the prior legislation, and when judicial

interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its judicial interpretations as well." *Id.* (citations and internal quotation marks omitted). Congress' failure to amend 18 U.S.C. § 2710 provides further support for our conclusion of Congressional intent to limit any private right of action to claims involving unlawful disclosure. *See id.*[4]

Rodriguez asserts that, even if *Sterk I* was properly decided, the district court misapplied *Sterk I* as precluding any form of relief because the Seventh Circuit's opinion was limited to an award of damages. However, the Seventh Circuit specifically held:

> It is true that subsection (c) authorizes other relief besides just damages, relief less obviously inappropriate to a violation of (d). That is particularly true of equitable relief, authorized in subsection (c)(2)(D). But when all that a plaintiff seeks is to enjoin an unlawful act, there is no need for express

---

[4] Rodriguez relies on *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), for the proposition that we may not consider Congress' failure to amend 18 U.S.C. § 2710 as Congressional endorsement of the decisions of the Sixth and Seventh Circuits. In *Cent. Bank of Denver*, a case involving the interpretation of § 10(b) of the Securities Exchange Act of 1934, the Supreme Court observed that "[w]hen Congress reenacts statutory language that has been given a consistent judicial construction, we often adhere to that construction in interpreting the reenacted statutory language." 511 U.S. at 166, 185 (citations omitted). However, the Supreme Court did not apply that rule of statutory construction because "Congress has not reenacted the language of § 10(b) since 1934 . . ." *Id.* at 185 (citation omitted).

> statutory authorization; absent the clearest
> command to the contrary from Congress,
> federal courts retain their equitable power to
> issue injunctions in suits over which they have
> jurisdiction.

*Sterk I*, 672 F.3d at 539 (citations and internal quotation marks omitted). As the Seventh Circuit observed, the Act's mere mention of equitable relief in a provision that is inapplicable to retention of a consumer's personal information does not support Rodriguez's assertion of a private right of action. *See id.* In other words, the equitable relief provided in subsection (c)(2)(D) does not provide an independent basis for a private right of action because it merely delineates relief that is traditionally within the court's inherent authority. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co., Inc.(AZ)*, 632 F.3d 1111, 1121 (9th Cir. 2011) (articulating that "unless otherwise provided by statute, the court retains its full equitable powers") (citations and internal quotation marks omitted). Thus, Rodriguez's action for injunctive relief fares no better under *Sterk I.*

After carefully examining the legislative history, structure and language of 18 U.S.C. § 2710 as a whole, we agree with the Sixth and Seventh Circuits, and conclude that the district court properly dismissed Rodriguez's unlawful retention claim for lack of a private right of action.

## B.  Rodriguez's Unlawful Disclosure Claim

Rodriguez contends that the district court erred in dismissing his unlawful disclosure claim pursuant to the ordinary course of business exception provided in 18 U.S.C.

§ 2710.  Rodriguez specifically asserts that he sufficiently alleged an unlawful disclosure claim premised on disclosure of his personal information between distinct corporate entities to which the exception was inapplicable, and that Sony's transfer of ownership between Sony Computer and Sony Network was a factual issue not resolvable at the motion to dismiss stage.[5]

The district court properly dismissed Rodriguez's unlawful disclosure claim pursuant to the Act's exemption for disclosures made "incident to the ordinary course of business of the video tape service provider[.]"  18 U.S.C. § 2710(b)(2)(E).  The Act defines "ordinary course of business" as meaning "debt collection activities, order fulfillment, request processing, and the transfer of ownership."  18 U.S.C. § 2710(a)(2).  In the First Amended Complaint that was subject to the district court's first order of dismissal, Rodriguez expressly alleged that Sony Computer "shared, sold, and/or transferred" his personal information to Sony Network after Sony Network "took over the [Playstation Network]."  The plain language of the Act

---

[5] Sony challenges Rodriguez's standing to pursue an unlawful disclosure claim because he failed to allege an injury-in-fact.  The Seventh Circuit has rejected a similar challenge to a plaintiff's standing under the Act.  *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) (*Sterk II*).  The Seventh Circuit observed that "Redbox appears to confuse the separate issue of whether plaintiffs have suffered financial harm as a result of the disclosure with Article III's injury-in-fact requirement for purposes of constitutional standing to bring suit in the first place."  *Id.* (footnote reference omitted).  "By alleging that Redbox disclosed their personal information in violation of the [Act, the plaintiffs] have met their burden of demonstrating that they suffered an injury in fact that success in this suit would redress."  *Id.*  We reach a similar conclusion as to Rodriguez's standing.  *See id.*

exempts the transfer of ownership alleged in the First Amended Complaint. *See id.*

Rodriguez's subsequent attempt to thwart the statutory language by artfully pleading that Sony Network assumed the management of the PlayStation Network as opposed to assuming ownership is unconvincing, especially considering that the more recent pleading completely contradicts the earlier pleading. *See Saldana v. Occidental Petroleum Corp.*, 774 F.3d 544, 551 (9th Cir. 2014) ("We . . . need not accept as true legal conclusions contained in the complaint.") (citation omitted); *see also United States v. Corinthiam Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (explaining that an amended complaint should aver "additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint") (citation and internal quotation marks omitted).[6]

We also agree with the Seventh Circuit that intra-corporate disclosures are not unauthorized disclosures under the Act. In *Sterk II*, Redbox provided Stream Global Services a database containing the personal information of Redbox customers to enable Stream Global to service customers on behalf of Redbox. *See* 770 F.3d at 620–21. The Seventh Circuit concluded that Redbox's "wholesale disclosure of information pertaining to all customers" did not contravene the Act because the disclosures were intended to support Redbox's services. *Id.* at 627. As the Seventh Circuit cogently observed, the Senate Report reflects Congress'

---

[6] We do not agree with Rodriguez that the determination of whether the exemption applies is a factual determination. *See Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012), *as amended* ("The construction or interpretation of a statute is a question of law . . .") (citation omitted).

awareness of the unremarkable fact that no business is an island and that video tape services providers, like many other businesses, "may use third parties in their business operations. . . ." *Id.* at 624 (quoting Senate Report No. 100-599 at 14). The functions performed by these third parties fall within the definition of "order fulfillment" or "request processing." *Id.* (quoting S. Rep. No. 100-599 at 14). Thus, even if the district court accepted the contradictory allegations of the Second Amended Complaint as true, the outcome for Rodriguez would not change. The reason is simple – if Sony Network assumed management of the Playstation Network on behalf of Sony Computer, that service would fall comfortably within the "order fulfillment" or "request processing" exemptions set forth in § 2710(a)(2), (b)(2)(E). Either way, Rodriguez loses.

## IV.    *CONCLUSION*

The district court properly dismissed Rodriguez's unlawful retention claim. We join the Sixth and Seventh Circuits in holding that the Act does not provide a private right of action for the retention of a consumer's personal information beyond the time limitations established in 18 U.S.C. § 2710(e). The Act's legislative history and the language and structure of 18 U.S.C. § 2710 reflect that Congress limited any civil remedies to the unlawful disclosure of a consumer's personal information.

The district court also properly dismissed Rodriguez's unlawful disclosure claim. Rodriguez failed to sufficiently allege that intra-corporate disclosures of consumers' personal

information between Sony entities to sustain the operations of the PlayStation Network violated the Act.

**AFFIRMED.**